JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

AURORA CORPORATION OF
AMERICA, a California
corporation,

                    Plaintiff,

          v.

MICHLIN PROSPERITY CO.,
Ltd., a Taiwanese
corporation; DOES 1-20,
inclusive,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CV 13-03516 RSWL (JCx)

**ORDER re: DEFENDANT'S
MOTION FOR ORDER
DISMISSING ACTION AS
AGAINST DEFENDANT,
MICHLIN PROSPERITY CO.,
LTD., FOR LACK OF
PERSONAL JURISDICTION
[FRCP Rule 12(b)(2)]**
[39]

    Before the Court is Defendant's Motion for Order
Dismissing Action as Against Defendant Michilin
Prosperity Co., Ltd., for Lack of Personal Jurisdiction
[39], Plaintiff's Request for Judicial Notice [42], and
Defendant's Request for Judicial Notice [44-1].  The
Court, having considered all arguments presented, **NOW
FINDS AND RULES AS FOLLOWS:**

    The Court **GRANTS** Defendant's Motion to Dismiss

1

pursuant to Federal Rule of Civil Procedure

("F.R.C.P.") 12(b)(2) [39].  The Court **DENIES**

Plaintiff's Request for Judicial Notice [42].  The

Court **DENIES** Defendant's Request for Judicial Notice

[44-1].  The Court **DENIES** Plaintiff's request, in the

alternative, to conduct jurisdictional discovery.

## I.  BACKGROUND

Plaintiff Aurora Corporation of America

("Plaintiff") is a California corporation authorized to

do business with the State of California.  Compl. ¶ 1.

Defendant Michilin Prosperity Co., Ltd., ("Defendant")

is a Taiwanese corporation with its principal place of

business in Taipei, Taiwan.  Compl. ¶2.  At all

relevant times, Defendant was the designer and

manufacturer of the Aurora AS1000X 10CC Cross Cut Paper

Shredder ("Shredder").  Compl. ¶ 3.  Plaintiff is the

distributor of the Shredder.  Compl. ¶ 12.  The

Shredder was manufactured at Defendant's plant located

in China.  Compl. ¶ 13; See Compl., Ex. A, Affidavit of

Frank Chang ("Chang Affidavit") ¶ 6.  After the

Shredder was manufactured, the Shredder was then

shipped to Plaintiff in Torrance, California.  Compl. ¶

14; See Chang Aff. ¶ 6.

The present action arises out of a May 2008

incident involving a minor who was injured when she

stuck her hand into the Shredder.  Compl. ¶ 8.  As a

result of the incident, a lawsuit was filed with the

U.S. District Court for the Northern District of

2

Georgia.  <u>Id.</u>  <u>See</u> <u>Askue v. Aurora Corporation, et al.</u>,
Civil Action File No. 1:10-cv-0948-JEC ("the Georgia
action").  Plaintiff and Defendant were named
defendants in the Georgia action.  Mot., 2:11-12.
Defendant was dismissed from the Georgia action for
lack of personal jurisdiction pursuant to F.R.C.P.
12(b)(2).  Mot., 2:12-13.

The present action is an indemnity action filed by
Plaintiff against Defendant for amounts paid by
Plaintiff to defend and settle the Georgia action.
Mot., 2:4-9.  On July 17, 2015, Defendant filed the
instant motion, requesting the Court to dismiss this
action against Defendant for lack of personal
jurisdiction.  On July 28, 2015, Plaintiff filed its
Request for Judicial Notice.  On August 04, 2015,
Defendant filed its Request for Judicial Notice.

## II.  DISCUSSION

**A.  <u>Legal Standard</u>**

### 1.  <u>Judicial Notice</u>

A court may take judicial notice of "a fact that is
not subject to reasonable dispute because it: (1) is
generally known within the court's territorial
jurisdiction; or (2) can be accurately and readily
determined from sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201(b).

### 2.  <u>Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(2)</u>

Pursuant to Federal Rule of Civil Procedure

12(b)(2), a district court cannot proceed against a defendant over which it lacks personal jurisdiction, unless that defendant has waived the requirement.  See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03 (1982).  In states where no applicable federal statute governs personal jurisdiction, that state's long-arm statute applies.  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  The exercise of personal jurisdiction over a nonresident defendant requires the presence of two factors: (1) California's laws must provide a basis for exercising personal jurisdiction, and (2) the assertion of personal jurisdiction must comport with due process.  Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1477 (9th Cir. 1986).  California's long arm statute permits the exercise of personal jurisdiction to the fullest extent permitted by due process.  See Cal. Civ. Proc. Code § 410.10; Panavision, 141 F.3d at 1320.  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).  Thus, only a due process analysis is required here.

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." Int'l
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
(internal quotation marks omitted).  The plaintiff
bears the burden of proving that the defendant has
sufficient minimum contacts with the forum state that
warrant the court's exercise of personal jurisdiction.
Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &
Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003).
Depending on the nature and scope of the defendant's
contacts with the forum, jurisdiction may be general or
specific to a cause of action.  Roth v. Garcia Marquez,
942 F.2d 617, 620 (9th Cir. 1991).

When a defendant's contacts with the forum state
are "substantial" or "continuous and systematic,"
general jurisdiction may be exercised over that
defendant for any cause of action, even if it is
unrelated to the defendant's activities within the
forum state.  Schwarzenegger, 374 F.3d at 801-02; Data
Disc, Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1287
(9th Cir. 1977).  In cases where a defendant's contacts
are insufficient to support an exercise of general
jurisdiction, more limited specific jurisdiction may be
found where a cause of action arises out of or is
related to the defendant's activities in the forum
state.  Burger King Corp. v. Rudzewicz, 471 U.S. 462,
472-73 (1985); Ballard v. Savage, 65 F.3d 1495, 1498
(9th Cir. 1995).  "Specific jurisdiction may be
exercised with a lesser showing of minimum contacts

than is required for the exercise of general jurisdiction." ACORN v. Household Int'l, Inc., 211 F. Supp. 2d 1160, 1164 (C.D. Cal. 2002).   The Ninth Circuit uses a three-part test to determine whether there is specific jurisdiction over a defendant: (1) the defendant must purposefully avail herself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) the plaintiff's claim must arise out of, or result from, the defendant's forum-related contacts; and (3) the extension of jurisdiction must be 'reasonable.'" Adv. Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d 1084, 1089 (C.D. Cal. 2012) (citing Roth v. Garcia Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991)).

As to the first prong, the Ninth Circuit generally uses a purposeful direction analysis when an action sounds in tort, whereas it uses a purposeful availment analysis when an action sounds in contract. Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672-73, n.2 (9th Cir. 2012).

"When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard, 65 F.3d at 1498.   In order to make a prima facie showing, the plaintiff must produce admissible evidence, which, if believed, would be sufficient to establish the Court's

personal jurisdiction.  Enriquez v. Interstate Grp.,
LLC, No. 11-CV-05155 YGR, 2012 WL 3800801, at *3 (N.D.
Cal. Aug. 31, 2012).  Accordingly, a district court is
to take uncontroverted allegations in the complaint as
true.  AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d
586, 588 (9th Cir. 1996).  However, "mere allegations
of the complaint, when contradicted by affidavits, are
[not] enough to confer personal jurisdiction of a
nonresident defendant.  In such a case, facts, not mere
allegations, must be the touchstone." Taylor v.
Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir.
1967).  See also Chem Lab Prods., Inc. v. Stepanek, 554
F.2d 371, 372 (9th Cir. 1977); Cummings v. W. Trial
Lawyers Ass'n, 133 F. Supp. 2d 1144, 1154 (D. Ariz.
2001).  Parties may go beyond the pleadings and support
their positions with discovery materials, affidavits,
or declarations.  Am. Inst. of Intradermal Cosmetics,
Inc. v. Soc'y of Permanent Cosmetic Prof's, No. CV 12-
06887 GAF JCGX, 2013 WL 1685558, at *4 (C.D. Cal. Apr.
16, 2013).  "[C]onflicts between the facts contained in
the parties' affidavits must be resolved in [the
plaintiff's] favor for purposes of deciding whether a
prima facie case for personal jurisdiction exists."
AT&T, 94 F.3d at 588.  "At the same time, however, the
plaintiff must submit admissible evidence in support of
its prima facie case." Id.

**B.** **Analysis**

   1.  Plaintiff's Requests for Judicial Notice

a.   *Plaintiff's request that the Court judicially notice the Affidavit of Frank Chang*

In Plaintiff's Request for Judicial Notice [42], Plaintiff requests that the Court take judicial notice of the Chang Affidavit, pursuant to Federal Rule of Evidence ("F.R.E.") 201(c)(2).

"There is a mistaken notion that taking judicial notice of court records ... means taking judicial notice of the existence of facts asserted in every document of a court file, including pleadings and affidavits.  The concept of judicial notice requires that the matter which is the proper subject of judicial notice be a fact that is not reasonably subject to dispute.  Facts in the judicial record that are subject to dispute, such as allegations in affidavits, declarations, and probation reports, are not the proper subjects of judicial notice even though they are in a court record."  Rivera v. Hamlet, 2003 WL 22846114, at *5 (N.D. Cal. Nov. 25, 2003) (citing B. Jefferson, California Evidence Benchbook (3d ed.2003 update), § 47.10).

Accordingly, this Court takes judicial notice of the existence of the Chang Affidavit, but declines to take judicial notice of any facts or statements contained in the Chang Affidavit.  Specifically, the Court cannot take judicial notice that any facts recited in the Chang Affidavit are true.  The Court

hereby **DENIES** Plaintiff's request that the Court take judicial notice of the Chang Affidavit, as to its substance.

> b.  *Plaintiff's request that the Court judicially notice the Opinion and Order in Fellowes*

In Plaintiff's Request for Judicial Notice [42], Plaintiff further requests that the Court take judicial notice of the Opinion and Order issued in <u>Fellowes, Inc. v. Michlin Prosperity Co.</u>, 491 F. Supp. 2d 571 (E.D. Va., June 22, 2007).

Generally, a court may take judicial notice of the existence of a court file in another court, however, it cannot take judicial notice of factual findings made by that court. "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." <u>M/V Am. Queen v. San Diego Marine Constr. Corp.</u>, 708 F.2d 1483, 1491 (9th Cir. 1983); <u>see also</u> <u>Wyatt v. Terhune</u>, 315 F.3d at 1114 n. 5 ("Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice") (overruled on other grounds).  Other circuits have followed this general rule, holding that a court cannot take judicial notice of factual findings made by another court.  <u>See</u> <u>United States v. Jones</u>, 29 F. 3d 1549, 1553 (11th Cir. 1994) (holding that it is

improper to take judicial notice of another court's
findings establishing nature of salary in dispute);
Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.,
969 F.2d 1384, 1388-89 (2d Cir. 1992) (holding that it
is improper to take judicial notice of bankruptcy
court's finding that sellers provided notice to
preserve their trust rights and were cash sellers).

Accordingly, this Court will not take judicial
notice of any of the factual findings in the Fellowes
Opinion and Order.  This Court cannot rely on the
findings of the Virginia court to establish facts
essential to support Plaintiff's contentions in the
present action.  The Court therefore **DENIES** Plaintiff's
request to take judicial notice of the Opinion and
Order in Fellowes.

2.   Defendant's Request for Judicial Notice

Defendant requests that the Court take judicial
notice of the opinion of the United States District
Court, Northern District of Georgia, issued in the
Georgia action, Askue v. Aurora Corporation of America,
2012 U.S. Dist. LEXIS 32626 (N.D. Ga. 2012).  Def.'s
Reply, Ex. A.

As previously discussed, "a court may not take
judicial notice of proceedings or records in another
cause so as to supply, without formal introduction of
evidence, facts essential to support a contention in a
cause then before it."  M/V Am. Queen v. San Diego
Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.

1983).   As such, this Court **DENIES** Defendant's request
to judicially notice the Georgia District Court's
opinion in <u>Askue</u>.

    3.   <u>Defendant's Motion to Dismiss for Lack of</u>
        <u>Personal Jurisdiction</u>

      a.   *General Personal Jurisdiction*

Plaintiff asserts that it "could make an argument"
that this Court has general jurisdiction over Defendant
based on Defendant's "significant presence and activity
in the United States and California," but that this
argument is "unnecessary" because sufficient minimum
contacts have been established.   Opp'n. 4:14-19.
Plaintiff does not make any further argument in support
of this contention, and thus does not meet its burden
of proving that this Court should exercise general
personal jurisdiction over Defendant.   As such, this
Court finds that it does not have general personal
jurisdiction over Defendant.

      b.   *Specific Personal Jurisdiction*

Specific jurisdiction is proper only when (1) the
defendant has performed some act by which he
purposefully avails himself of the privilege of
conducting activities in the forum, thereby invoking
the benefits and protections of its laws; (2) the claim
arises out of, or results from, the defendant's forum-
related activities; and (3) the exercise of
jurisdiction is "reasonable." <u>Terracom v. Valley Nat'l</u>
<u>Bank</u>, 49 F.3d 555, 560 (9th Cir. 1995) (citing <u>Shute v.</u>

1  *Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.
2  1990)).

3      Plaintiff bears the burden of satisfying the first
4  two prongs of the test.  *Schwarzenegger v. Fred Martin*
5  *Motor Co.*, 374 F.3d 797, 802 (citing *Sher v. Johnson*,
6  911 F.2d 1357, 1361 (9th Cir. 1990)).  If the plaintiff
7  fails to satisfy either of these prongs, personal
8  jurisdiction is not established in the forum state.
9  *Id.*  If the plaintiff succeeds in satisfying both of
10 the first two prongs, the burden then shifts to the
11 defendant to "present a compelling case" that the
12 exercise of jurisdiction would not be reasonable.  *Id.*
13 "[A] plaintiff must make only a prima facie showing of
14 jurisdictional facts through the submitted materials in
15 order to avoid a defendant's motion to dismiss."  *Data*
16 *Disc, Inc. v. Sys. Tech. Associates, Inc.*, 557 F.2d
17 1280, 1285 (9th Cir. 1977).

18     Plaintiff relies on the shipment of the Shredder
19 from China to California as the basis for its indemnity
20 claims.  *See* Compl. ¶¶ 16-24.  Because Plaintiff's
21 claims are based on indemnity, the Court finds that
22 this action sounds primarily in contract.  As such, the
23 first prong is analyzed under the "purposeful
24 availment" standard.[1]

25

26      [1]*See* *Repwest Ins. Co. v. Praetorian Ins. Co.*, 890 F. Supp.
27 2d 1168, 1188 (D. Ariz 2012) ("In cases arising out of
   contractual relationships, including those involving related tort
28 claims, the Ninth Circuit applies the 'purposeful availment'
   test").

1              i.  *Purposeful Availment*

2      "To have purposefully availed itself of the

3  privilege of doing business in the forum, a defendant

4  must have 'performed some type of affirmative conduct

5  which allows or promotes the transaction of business

6  within the forum state.'"  <u>Boschetto v. Hansing</u>, 539

7  F.3d 1011, 1016 (9th Cir. 2008).  A purposeful

8  availment analysis considers "whether the defendant's

9  contacts with the forum are attributable to his own

10  actions or are solely the actions of the plaintiff."

11  <u>Amini Innovation Corp. v. JS Imports, Inc.</u>, 497

12  F.Supp.2d 1093 (C.D. Cal. 2007) (citing <u>Sinatra v.</u>

13  <u>National Enquirer</u>, 854 F.2d 1191, 1195 (9th Cir.

14  1988)).

15      In the present case, Plaintiff has asserted claims

16  for contractual indemnity, equitable indemnity, and

17  indemnity through course of conduct.  Plaintiff makes

18  the following allegations to support a finding of

19  specific jurisdiction over Defendant: Plaintiff alleges

20  that Defendant

21              (a) shipped the subject Shredder from

22              Taiwan to the Plaintiff in Torrance,

23              California; (b) set the price of the

24              shredders for sale in the United States;

25              (c) contracted with major retailers in

26              the United States for sale of its

27              products; (d) sold the majority of its

28              shredders in the United States; (e)

13

1    advertised its shredders as receiving

2    awards from various office equipment

3    organizations in the United States; and

4    (f) profited significantly from the sale

5    of products to and throughout

6    California.

7  Opp'n 3:4-20, 8:23-26.

8                a.   *Shipment of the Shredder*

9      Plaintiff alleges that the Shredder was shipped by

10 Defendant from Taiwan to California, and thereby

11 Michilin established significant contact with "the

12 United States and California."  Id. at 3:1-6.

13 Plaintiff bases this allegation on statements contained

14 in paragraph five of the Chang Affidavit.  Opp'n, 3:4-

15 6.  As discussed above, the Court will not judicially

16 notice the substance of the Chang Affidavit, thereby

17 declaring the allegations made within as true.

18 Further, upon review of the Chang Affidavit,

19 Plaintiff's claim that "the subject Shredder was

20 shipped *by Michilin* from Taiwan to Aurora in

21 Torr[a]nce, California" is not substantiated by the

22 language of the cited paragraph.  Id. (emphasis added)

23 It appears from the language of the Affidavit that

24 Plaintiff intended to reference paragraph six of the

25 Chang Affidavit.  Nonetheless, paragraph six does not

26 support Plaintiff's contention that the Shredder was

27 shipped *by Defendant* from Taiwan to California, such

28 that the shipment was made at Defendant's direction or

while it was within Defendant's control.  Rather,
paragraph six states that the "[S]hredder was then
shipped to Aurora Corporation of America...", with no
indication of who directed the shipment of the product.
Chang Aff. ¶ 6.  The Chang Affidavit simply states:
"After the paper shredder was delivered to Aurora
Corporation of America, Michilin had no further
involvement with the distribution or sale of the
product." Id.

Plaintiff also cites paragraph five of the
Declaration of Frank Chang in Support of Defendant's
Motion to Dismiss ("the Chang Declaration") to support
its contention that Defendant shipped the Shredder to
California.  Opp'n, 3:4-6.  Again, the referenced
paragraph of the Chang Declaration does not
substantiate Plaintiff's claim that Defendant directed
the shipment of the Shredder from Taiwan to California.
See Pl.'s Mot., Chang Decl. ¶ 5 [39-2].  Plaintiff does
not offer any further evidence regarding this
allegation, and therefore has not met its burden of
proving that Defendant purposefully availed itself of
doing business in California by shipping the subject
Shredder to California.  Again, it appears from the
language of the Declaration that Plaintiff intended to
reference paragraph six of the Chang Declaration.
Still, paragraph six of the Chang Declaration does not
support the contention that Defendant directed the
shipment of the Shredder to California.  Rather,

paragraph six contradicts Plaintiff's allegation, stating, "The Michilin model AS1000X paper shredders were manufactured at Michilin's plant located in China. Pursuant to specific order and direct instructions from Aurora ... the AS1000x paper shredders were shipped 'Free on Board' (F.O.B.) Yan-Tain, China."  Chang Decl. ¶ 6.

Defendant argues that the Shredder was shipped pursuant to Plaintiff's orders and instructions, and that ownership of the Shredder transferred to Aurora before departing China as the shredders were shipped "Free On Board" (F.O.B.) Yan-Tain, China.  Mot. 9:15-21.

In an "F.O.B." contract, "[t]he seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass into the transporter's possession." FREE ON BOARD, Black's Law Dictionary (10th ed. 2014). The Ninth Circuit has yet to determine whether F.O.B. shipments are sufficient to establish minimum contacts in a state.[2]  The Fifth Circuit has held that an "F.O.B

---

[2] The United States District Court for the District of Hawaii has held that "agreeing to delivery F.O.B. North Carolina does not negate purposeful availment of the laws of Hawaii." Rudolph v. Topsider Bldg. Sys., Inc., No. CIV 07-00225 SOM-BMK, 2007 WL 2156089, at *4 (D. Haw. July 24, 2007).  In Rudolph, the Court found that other factors despite the F.O.B. shipment subjected the defendant to personal jurisdiction, including discussions concerning using the shipped products in Hawaii, six separate shipments to Hawaii, and a warranty and offer for trouble-shooting that indicated contemplation of future consequences.  Id. at *5.  The Court in Rudolph cited a case in Maine, where minimum contacts were found despite shipment F.O.B. Honeoye, New York due to extensive negotiations, a thirty-day

term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as quantity and regularity of shipments, suggest that jurisdiction is proper." Luv N' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 471-72 (5th Cir. 2006). Precedent regarding F.O.B. shipments and personal jurisdiction have required "other factors" to be present in order for the Court to find purposeful availment to establish personal jurisdiction.[3]

Here, Plaintiff has not put forth evidence of any "other factors" that would make this Court's exercise of personal jurisdiction over Defendant proper. Plaintiff has not offered any admissible evidence of extensive negotiations, warranties, multiple shipments, or the amount of sales or revenue arising from shipment(s) to California. Therefore, the Court finds that the subject shipment, F.O.B. Yan-Tain, China, is not joined by the requisite "other factors" to establish sufficient minimum contacts to enable this Court to exercise specific personal jurisdiction.

b. *Setting the Price of the Shredder*

Plaintiff alleges that Defendant purposefully

---

warranty, start-up assistance, and significant shipment of goods into Maine. Id. at *4, see also Lucerne Farms v. Baling Technologies, Inc., 226 F.Supp.2d, 25 (D.Me.2002).

[3] In Luv N' care, the court found the defendant derived substantial revenue from its shipments to the forum state through evidence of sales of thousands of units into the forum state, making up 4.5% of the defendant's total distribution. 438 F.3d 465 (5th Cir. 2006).

availed itself of doing business in California by
maintaining control over its products after they are
shipped to the United States. Opp'n., 7:23-27.
Plaintiff bases this allegation on statements made in
the Fellowes Opinion. As discussed above, the Court
will not take judicial notice of the substance of the
Opinion, as it consists of factual findings reached in
another court's proceeding. Even if the Court could
consider the findings of the Fellowes Opinion, the
Fellowes court's findings establish that Defendant
maintained control of its products after they were
shipped to the United States generally, which does not
support a finding of purposeful availment in California
specifically. Plaintiff provides no further evidence
in support of this allegation. As such, the Court
finds that Plaintiff's allegation that Defendant
maintained control over its products after the reached
the United States does not support a finding that
Defendant purposefully availed itself of California's
jurisdiction.

c.   *Contracting with U.S. Retailers*

Plaintiff argues Defendant purposefully availed
itself of California's jurisdiction because Defendant
"contracts with and sells its products through Target,
Wal-Mart, Big Lots and Office Depot, all of which
maintain multiple locations within the United States,
including California." Opp'n, 4:23-26. To prove this
allegation, Plaintiff cites the same Fellowes Opinion

18

as discussed above, which the Court should not take
judicial notice of in order to establish its contents
as true.  Plaintiff does not provide any further
evidence to support that Defendant contracts with
multiple stores located in California.  Therefore, the
Court finds that Plaintiff's allegation is not
supported by sufficient evidence to warrant a finding
of purposeful availment.

> d.  *Majority of Shredders Sold in U.S.*

Plaintiff then argues Defendant purposefully
availed itself of California's jurisdiction through
additional evidence derived from the <u>Fellowes</u> Opinion,
alleging that "about 85% of Michilin's shredders [were]
available for sale in the United States in 2004."
Opp'n, 8:1-3.  As discussed above, the Court cannot
judicially notice the contents of this Opinion.  The
Plaintiff does not offer any other evidence to support
this assertion.  Therefore, the Court should find that
this allegation does not support a finding of
purposeful availment.

> e.  *Advertisement of U.S. Awards*

Plaintiff asserts that Defendant's advertisement of
awards received from United States based office
equipment organizations on Defendant's website is
evidence of purposeful availment in California.  Opp'n,
3:16-18.  Plaintiff admits that Defendant's use is a
"public advertisement to the world" but that since the
awards are from U.S. companies, the use functions as an

1   example of Defendant doing business in and with the
2   United States. Opp'n. 8:12-15. In J. McIntyre
3   Machinery, Ltd., v. Nicastro, the defendant directed
4   marketing and sales efforts at the United States. 131
5   S. Ct. 2780 (2011). Justice Kennedy stated that "the
6   question concerns the authority of a New Jersey state
7   court to exercise jurisdiction, so it is petitioner's
8   purposeful contacts with New Jersey, not with the
9   United States, that alone are relevant." Id. at 2790.
10  Here, the question concerns California's authority to
11  exercise jurisdiction, thus Defendant's contacts with
12  the United States in general are not sufficient, as per
13  the Supreme Court's holding in J. McIntyre, to
14  establish purposeful availment of California's
15  jurisdiction. As such, the Court finds that
16  Defendant's advertisement of awards from U.S. companies
17  for its product does not establish that Defendant
18  purposefully availed itself of California's
19  jurisdiction specifically.

20            f.  *Significant Profits from California*

21        Plaintiff further alleges that Defendant's contacts
22  with California include "significant profits from the
23  sale of products to and throughout California." Opp'n,
24  3:19-20. Plaintiff does not present any evidence
25  regarding Defendant's actual sales or profits arising
26  from California. Plaintiff relies solely on the above-
27  referenced allegation from the Fellowes Opinion that
28  because "85% of Michilin's shredders [were] available

for sale in the United States in 2004", this amounts to Defendant receiving substantial revenue from these sales.  Id. at 8:1-7.  Plaintiff then asserts that therefore Defendant "knew it was generating significant revenue based on products that would be sold to California users."  Id.  Again, the Court will not judicially notice the findings of the Fellowes court. Plaintiff provides no further admissible evidence as to the alleged "significant profits" Defendant acquires "from the sale of products to an throughout California."  Plaintiff instead supports its contention with conclusory allegations.  Without further evidence, the Court finds that Plaintiff has failed to establish that Defendant purposefully availed itself of California through alleged significant profits from California.

> g.  *Entry of Products into Stream of*
> *Commerce*

Plaintiff then asserts that Defendant was aware its products would reach California users because it sold a "large amount of products" to Plaintiff, a wholly-owned California distributor.  Id. at 7:18-20.  Defendant contends that their contact with Plaintiff in California, if any, was incidental: Defendant sold its products "in China to a California distributor who imported the products into California for distribution and sale in the United States."  Reply 10:17-19. Plaintiff does not offer any admissible evidence as to

its claim, but rather again simply cites the findings
of the <u>Fellowes</u> court.  <u>Id.</u> at 7:12-22.  Still,
evidence that Defendant engaged in transactions with a
California distributor for United States retailers is
insufficient to warrant the exercise of California's
specific personal jurisdiction.  The mere fact that
Defendant opted to participate in a business
relationship with Plaintiff knowing that Plaintiff had
an office in California is insufficient to create
minimum contacts.  <u>See</u> <u>Dynamic Software Servs. v.</u>
<u>Cyberbest Tech., Inc.</u>, 2014 WL 3373924 at *9 (N.D. Cal.
July 9, 2014) ("Mere knowledge that the plaintiff is
based in the forum state is insufficient to establish
purposeful availment.")

　　　Plaintiff argues that the "large volume of sales of
products that traveled to California end-users was not
random or fortuitous" and therefore Defendant "was
aware that a large amount of products it sold to
[Plaintiff] ... would reach California users."  Opp'n
7:12-20.  Plaintiff relies on <u>Bridgestone Corp. v.</u>
<u>Superior Court</u>, in which a California court exercised
jurisdiction based on "a manufacturer's placement of
goods in the stream of commerce with the expectation
that they will be purchased or used by consumers in
California [as] indicat[ing] an intention to serve the
California market 'directly or indirectly.'"  99 Cal.
App. 4th 767, 777 (Cal. Ct. App. 2002) (citing <u>World-</u>
<u>Wide Volkswagen Corporation v. Woodson</u>, 444 U.S. 286,

1  297 (1980)).  However, Plaintiff did not consider the

2  court's whole statement.  In the same sentence, the

3  California Court of Appeal explained that this

4  placement of goods in the stream of commerce

5  "constitutes purposeful availment if the income earned

6  by the manufacturer from sale or use of its product in

7  California is substantial."  Id.

8       Plaintiff has not submitted any evidence as to

9  Defendant's income earned due to sales or use of the

10  product, if any, in California.  Because the evidence

11  put forth by Plaintiff does not sufficiently prove

12  substantial income from sale or use of the product in

13  the state of California, the Court finds that Plaintiff

14  has not met its burden of proving purposeful availment

15  through the stream of commerce doctrine, as outlined in

16  Bridgestone.

17       Defendant argues that the Bridgestone court relied

18  on the "stream of commerce" doctrine of specific

19  jurisdiction.[4]  Reply 8:14-21.  Defendant asserts that

20  the Court should apply the "stream of commerce plus"

21  doctrine, in which the Supreme Court reasoned that mere

22  foreseeability or awareness that a product may enter a

23  forum state is insufficient without "additional

24

25

26       [4]The "stream of commerce" doctrine provides that "the forum
state does not exceed its powers under the Due Process Clause if
27  it asserts personal jurisdiction over a corporation that delivers
products into the stream of commerce with the expectation that
28  they will be purchased by consumers in the forum State."  World-
Wide Volkswagen Corp. v. Woodson, 444. U.S. 286, 297-298 (1980).

conduct."[5]  Opp'n 8:27-28, 9:1-17.  In the present case,
Plaintiff has not provided sufficient evidence that
Defendant has engaged in any direct contact with
California.  Further, Plaintiff has failed to provide
evidence of additional conduct directed at California
necessary to satisfy the "stream of commerce plus"
doctrine enumerated in Asahi and J. McIntyre.

In the present case, in accordance with the
"stream of commerce plus" doctrine discussed in both
the plurality opinions from Asahi and J. McIntyre, and
Justice Breyer's concurrence in J. McIntyre, the Court

---

[5]  Since World-Wide Volkswagen, Courts have differed as to
what evidence is sufficient to establish the "expectation" that a
product will be purchased by consumers in the forum State.  The
United States Supreme Court has attempted to clarify the "stream
of commerce" doctrine in Asahi Metal Industry Co. v. Superior
Court, 480 U.S. 102 (1987), and J. McIntyre Machinery, Ltd. v.
Nicastro, 131 S.Ct. 2780 (2011), with both plurality opinions
noting that "something more" than "mere foreseeability" is
needed.  However, the lack of a majority in both cases has
continued to leave circuits split as to the boundaries of the
"stream of commerce" doctrine.  Justice O'Connor's plurality
opinion in Asahi requires that the defendant engage in additional
conduct other than mere awareness that a given product will reach
the forum state.  Justice Brennan's concurrence in Asahi focuses
instead on foreseeability, in that "as long as a participant [in
the stream of commerce] is aware that the final product is being
marketed in the forum State, the possibility of a lawsuit there
cannot come as a surprise."  Asahi, 480 U.S. 102 at 117.  In J.
McIntyre, the Supreme Court attempted to clarify its earlier
holding from Asahi.  In Justice Kennedy's plurality opinion in J.
McIntyre, the Court reinforced the requirement of additional
conduct purposefully directed at the forum state and rejected
Justice Brennan's concurrence in Asahi.  Justice Breyer's
concurrence in J. McIntyre, followed by several Circuits as the
"narrowest grounds" from the holding, rejected the plurality's
strict rule that limits jurisdiction "where a defendant does not
'inten[d] to submit to the power of sovereign' and cannot 'be
said to have targeted the forum.'"  J. McIntyre, 131 S. Ct. 2780,
2793.

1   finds that Plaintiff has not made a sufficient showing

2   to establish that Defendant has purposefully availed

3   itself of California's jurisdiction.

4           ii.      *Forum-Related Activities*

5       Plaintiff argues that the damages at issue in the

6   present action arose out of Defendant's contacts with

7   the forum.  Plaintiff asserts that this "lawsuit arose

8   directly out of Michilin's contacts because all of

9   Michilin's products, including the subject Shredder,

10  were initially shipped to California, which were then

11  distributed throughout the state and country."  Opp'n

12  8:23-26.

13      Defendant argues in response that Plaintiff fails

14  to establish that this action "[arose] out of or

15  relates to...forum-related activities", as required by

16  Bridgestone.  Reply 10:27-11:2.  Defendant posits that,

17  even "assuming the 'contact' was Michilin's sale of the

18  AS1000X paper shredders in China to Aurora, a

19  California distributor, with the knowledge or

20  expectation that the paper shredders would be sold in

21  the United States ... there is no evidence that

22  Aurora's indemnification claim arises out of or has a

23  substantial connection with Michilin's 'contact' with

24  California."  Id. at 11:9-15.  The Court finds

25  accordingly.  Since the alleged accident occurred in

26  Georgia, see Askue v. Aurora Corp. Of America, 2012 WL

27  843939 at *4 (N.D.Ga. 2012), it does not follow that

28  Plaintiff's indemnification claims are related to

1  Defendant's alleged activities in California.

2      The Court finds that Plaintiff failed to put forth

3  sufficient evidence that the indemnity action arose out

4  of any of Defendant's alleged forum-related activities

5  to warrant the Court's exercise of personal

6  jurisdiction.

7           iii.    *Reasonableness of Court's Exercise of*

8                   *Personal Jurisdiction Over Defendant*

9      "If the plaintiff succeeds in satisfying both of

10 the first two prongs, the burden then shifts to the

11 defendant to 'present a compelling case' that the

12 exercise of jurisdiction would not be reasonable."

13 Adv. Skin & Hair, Inc. v. Bancroft, 858 F. Supp. 2d

14 1084, 1091 (C.D. Cal. 2012)(citing Schwarzenegger v.

15 Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.

16 2004)).  As discussed above, Plaintiff has not

17 satisfied either prong one or prong two of the specific

18 jurisdiction test, and thus the Defendant bears no

19 burden of proving prong three.    Further, Plaintiff

20 applies the incorrect law in determining whether the

21 exercise of jurisdiction over a defendant is

22 reasonable.  The Ninth Circuit has set forth seven

23 factors to be considered in determining whether the

24 exercise of jurisdiction over a nonresident defendant

25 is reasonable: (1) the extent to which the defendant

26 purposefully interjected itself into the affairs of the

27 forum state; (2) the burden on the defendant; (3)

28 conflicts of law between the forum and the defendant's

home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 623 (9th Cir. 1991).

Plaintiff improperly relies on Illinois case law indicating that "other jurisdictions" have "explicitly" recognized that an insurer doing business within a state has a "weighty interest" in litigating in that state, where an insurer has suffered serious losses due to the defendant's product injuring one of its insureds.  Opp'n 9:11-18, <u>Sentry Ins. Co. v. Bull HN Info. Sys., Inc.</u>, No. 97 C 4211, 1999 WL 51801, at *2 (N.D. Ill. Jan. 29, 1999).  Plaintiff calls attention to Illinois' interest in "protecting the interest of insurers of businesses in Illinois, thereby encouraging business growth and rational risk management" as weighing in favor of asserting jurisdiction.  <u>Id.</u>

Plaintiff asserts that because Defendant's alleged defective product harmed a minor child, Plaintiff paid compensatory damages when a lawsuit was filed by the child's parents.  Opp'n 9:19-22.  Plaintiff argues that Plaintiff and California both have a significant interest in "protecting the interests of its businesses from defective products that cause damages."  <u>Id.</u> Plaintiff does not address any of Defendant's arguments in regards to reasonableness.

27

Defendant, in turn, references the test from _World-Wide Volkswagen_. Defendant asks the Court to consider: "(1) the burden on Michilin, (2) the interests of the forum state, (3) plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining convenient and effective relief, and (5) the shared interest of the various jurisdictions in furthering fundamental substantive social policies." Mot. 14:14-22; _See World-Wide Volkswagen Corporation v. Woodson_, 444 U.S. 286, 292 (1980).

The only instance of interjection into California is the arrival of the Shredder to Plaintiff in California. Compl. ¶14. Defendant contends that if it is compelled to litigate in California, it will incur a substantial burden by having to travel to California for court appearances and to produce witnesses and evidence for proceedings. Mot. 15:4-14. Defendant does not address any of the prongs of the test other than the burden on itself.

Applying the Ninth Circuit's test as set forth in _Roth_, the Court weighs each factor individually.

a. _Purposeful Interjection_

In weighing the factor of purposeful interjection, the extent of the defendant's purposeful interjection into the forum is considered in regards to "the smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable

1   its exercise." <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11
2   F.3d 1482, 1488 (9th Cir. 1993).   Defendant argues that
3   its alleged wrongful conduct occurred in China, where
4   its business and employees are located, and that
5   Defendant has no physical sales force presence in the
6   state of California.   Reply, 13:2-6.   The only
7   interjection into California is a Defendant-
8   manufactured product, to which Defendant "surrendered
9   its custody, possession, and control in China."   Mot.
10  15:1-3.   As this element of purposeful interjection is
11  relatively small, the exercise of jurisdiction over
12  Defendant is less reasonable.   Thus, the Court finds
13  that this factor does not weigh in favor of
14  reasonableness.
15                  b.   *Burden on Defendant to Litigate in*
16                       *Forum*
17      Defendant argues that the burden of litigating in
18  California would be great because all of Defendant's
19  documents, communication, and witnesses are located in
20  China.   Reply, 13:11-15.   Defendant also argues that
21  there is a large burden of travel due to the mandatory
22  attendance requirements of this Court and Defendant has
23  no employees, agents, or representatives in California.
24  Mot., 15:4-10.   In light of the above, the Court finds
25  that this factor does not weigh in favor of
26  reasonableness.
27                  c.   *Conflict with Sovereignty*
28      The third factor evaluates "the extent of any

1  conflict with sovereignty" of the defendant's home

2  country or state.  Id.  Defendant acknowledges that the

3  Supreme Court "has recently emphasized the importance

4  of international comity as an important factor," but

5  fails to provide any evidence that keeping this case in

6  California would affect "international comity."  Mot.

7  14:20-22.  Defendant has not provided any evidence of a

8  conflict with any sovereignty and thus the Court finds

9  that this factor weighs in favor of reasonableness.

10              d.  *California's Interest*

11      The fourth factor "considers California's interest

12  in adjudicating the controversy."  Adv. Skin & Hair,

13  858 F. Supp. 2d at 1091.  Plaintiff alleges that

14  "defendants' defective product harmed a minor child"

15  which caused Plaintiff, a California corporation, to

16  pay compensatory damages in a lawsuit for the injury.

17  Plaintiff argues that California has a "significant

18  interest in protecting the interests of its businesses

19  from defective products that cause damages."  Opp'n.

20  9:19-22.  Defendant argues that this is "not a personal

21  injury-product liability action brought by a California

22  consumer against a foreign manufacturer, but is rather

23  a claim for reimbursement, brought by "a sophisticated

24  commercial distributor located in California against a

25  Taiwanese manufacturer."  Reply 12:18-22.  Because

26  California maintains a strong interest in "redressing

27  the injury of its citizen," the Court finds that this

28  factor weighs in favor of reasonableness.  Adv. Skin &

1  Hair, 858 F. Supp. 2d at 1091.

2              e.   *Efficient Judicial Resolution*

3      The fifth factor, focusing on the most efficient

4  judicial resolution of the controversy, "primarily

5  focuses on the location of the evidence and the

6  witnesses." Id. at 1092.  Defendant argues that all of

7  the evidence relating to the subject product, as well

8  as Defendant's witnesses, are located in China.  Reply,

9  13:11-13.  Plaintiff has not offered any evidence

10  relating to this matter.  Accordingly, the Court finds

11  that this factor does not weigh in favor of

12  reasonableness.

13              f.   *Plaintiff's Interest in Relief*

14      The sixth factor is the importance of the forum to

15  a plaintiff's interest in convenient and effective

16  relief. Id.  Nothing in the Parties' papers

17  establishes that effective relief is not available to

18  Plaintiff in China, Defendant's preferred choice of

19  forum.  Defendant argues that there is "no contractual

20  obligation addressing the indemnification claim," and

21  that Plaintiff "can and should pursue its

22  indemnification claim against Michilin in China."

23  Reply 13:15-18.  The Court finds that this factor

24  weighs slightly against a finding of reasonableness.

25              g.   *Alternative Forum*

26      The final factor is the availability of an

27  alternative forum.  Plaintiff has not alleged that

28  there are no alternative forums for its claims or that

Plaintiff could not bring its claims in China.  Again, Defendant has advised that Plaintiff should bring its indemnification claim against Defendant in China.  As such, the Court finds that this factor does not weigh in favor of reasonableness.

Since the majority of these factors weigh against a finding of reasonableness, this Court finds that it would be unreasonable for it to exercise personal jurisdiction over the Defendant.  Based on the foregoing reasons, the Court finds that it cannot exercise specific jurisdiction over Defendant. Accordingly, the Court **GRANTS** Defendant's Motion pursuant to Fed. R. Civ. P. 12(b)(2).  This action shall be dismissed for lack of personal jurisdiction.

4.   <u>Plaintiff's Request, in the Alternative, for Jurisdictional Discovery</u>

In its Opposition, Plaintiff requests that if the Court is inclined to grant Defendant's motion to dismiss, that Plaintiff be given an opportunity to conduct jurisdictional discovery, in order to further establish personal jurisdiction through minimum contacts.  Opp'n 10:2-8.  Plaintiff has not proffered any admissible evidence that Defendant has sufficient minimum contacts with California to warrant the exercise of specific personal jurisdiction over Defendant.  Plaintiff's allegations stem largely from the findings in another court's proceeding and as such do not rebut Defendant's evidence as to minimum

contacts.

Furthermore, Plaintiff's request for jurisdictional discovery is not narrowly tailored to flesh out certain instances of alleged minimum contacts, but rather generally requests that the Plaintiff be given the opportunity to further establish minimum contacts. <u>Id.</u> See <u>Dever v. Hentzen Coatings, Inc.</u>, 380 F.3d 1070, 1074, fn. 1 (8th Cir. 2004)(citing <u>Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402 (4th Cir.2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.")); <u>see also</u> <u>McLaughlin v. McPhail</u>, 707 F.2d 800, 806 (4th Cir.1983) (holding that district court *403 did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland" (internal quotation marks omitted)).  Accordingly, this Court **DENIES** Plaintiff's request, in the alternative, to conduct jurisdictional discovery.

   **IT IS SO ORDERED.**

DATED: September 29, 2015         s/ RONALD S.W. LEW
                                  **HONORABLE RONALD S. W. LEW**
                                  Senior U.S. District Judge